United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2003

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

m 02-10190

LUCINDA G. MILLER
AND
ELAINE KING MILLER,

Plaintiffs-Appellees,

VERSUS

TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, BARKSDALE, and
EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Texas Tech University Health Sciences Center ("Tech") appeals an order denying its motion to dismiss Elaine King Miller's claim of a violation of § 504 the Rehabilitation Act of 1973, 29 U.S.C. § 794. Tech argues that it enjoys state sovereign immunity from King Miller's § 504 claim. On the basis of *Pace v. Bogalusa City Sch. Bd.*, 325 F.3d 609 (5th Cir. 2003),[1] which binds us, we reverse and remand with instruction to dismiss the claim.

---

[1] *See also Johnson v. La. Dep't of Educ.*, No. 02-30318, 2003 U.S. App. LEXIS 8482 (5th Cir. May 5, 2003) (following *Pace*).

## I.

King Miller began working as an administrator and professor at Tech in 1997. She notified Tech that she suffered from a degenerative eye condition in August 1998; she was diagnosed as legally blind in 1999. In 2000, she sued Tech for allegedly failing to accommodate her disability in violation of § 504, which prohibits discrimination against the disabled by programs receiving federal funds.[2]

Tech concedes that King Miller suffers a "disability" as defined in § 504 and that Tech received federal funds from 1998 to 2000. Nevertheless, Tech moved to dismiss on the basis of state sovereign immunity. The district court denied the motion, and Tech filed this interlocutory appeal.[3]

## II.

"[T]he [Constitutional] Convention did not disturb States' immunity from private suits, thus firmly enshrining this principle in our constitutional framework." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002). The Eleventh Amendment partially reflects this principle by prohibiting "[t]he Judicial power of the United States" from extending to suits against a state "by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. CONST. amend. XI. Some therefore refer to the states' immunity from suit as "Eleventh Amendment immunity."

Yet, "[t]he phrase is . . . something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Rather, state sovereign immunity is a structural constitutional principle barring all suits against a state, including suits by a resident of the state. *S.C. State Ports Auth.*, 535 U.S. at 753 ("[T]he Eleventh Amendment does not define the scope of the States' immunity; it is but one particular exemplification of that immunity."). Thus, King Miller's § 504 claim is subject to Tech's sovereign immunity,[4] even though King Miller is a resident of Texas.

The Supreme Court has recognized two exceptions to the doctrine of state sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, Congress may abrogate state sovereign immunity using its power under section 5 of the Fourteenth Amendment. *Id.* King Miller does not contend that Congress has abrogated Tech's sovereign immunity against her claim. Congress indeed purported to abrogate state sovereign immunity against § 504 claims. 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section

---

[2] Section 504 states in pertinent part, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

[3] A denial of a motion to dismiss based on state sovereign immunity is appealable. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143-45 (1993). King Miller's other causes of action and those of her co-plaintiff, Lucinda Miller, are awaiting trial pending our decision in this appeal.

[4] King Miller concedes that Tech is an arm of the state and therefore entitled to Texas's sovereign immunity. *See, e.g.*, *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

504[.]"). We held in *Reickenbacker v. Foster*, 274 F.3d 974 (5th Cir. 2001), that § 2000d-7 did not validly abrogate state sovereign immunity under the Supreme Court's recent caselaw.[5]

Second, a state may waive its sovereign immunity by consenting to suit. *Coll. Sav. Bank*, 527 U.S. at 670. A state may waive its immunity for its own reasons or, as the Supreme Court has suggested, in exchange for some "gratuity" from Congress. *Id.* at 686. King Miller argues that § 2000d-7 conditions the receipt of federal funds on a waiver of sovereign immunity and that Tech waived its sovereign immunity by accepting funds.

Tech responds that it did not knowingly waive its sovereign immunity by accepting federal funds from 1998 to 2000, because it reasonably believed that Congress already had abrogated its immunity with § 2000d-7. We adopted this very argument in *Pace*, holding that the state could not knowingly waive its immunity under § 2000d-7 by accepting funds from 1996 to 1998. *Pace*, 325 F.3d at 617.[6] Accordingly, Tech did not knowingly waive its immunity.[7]

"In dicta, the Supreme Court has stated that

---

[5] *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999); *City of Boerne v. Flores*, 521 U.S. 507 (1997).

[6] *See also Johnson*, 2003 U.S. App. LEXIS 8482, at *4 (following *Pace*).

[7] We therefore do not address Tech's alternative argument that it lacked state-law authority to waive its sovereign immunity.

Congress may require states to waive their sovereign immunity as a condition for receiving federal funds." *Id.* at 615 (citing *Coll. Sav. Bank*, 527 U.S. at 686-87). We make two inquiries in determining whether a state has waived its sovereign immunity by accepting federal funds. First, "Congress must 'manifest[ ] a clear intent to condition participation in the programs funded under the [relevant] Act on a State's consent to waive its constitutional immunity.'" *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985)). Second, we ask whether the state knowingly and voluntarily intended to waive its immunity by accepting the funds. *Id.* at 616-17.

Section 2000d-7 satisfies the "clear statement" rule by conditioning receipt of federal funds on a state's waiver of sovereign immunity. In *Pederson v. La. State Univ.*, 213 F.3d 858, 876 (5th Cir. 2000), we held that § 2000d-7 "clearly, unambiguously, and unequivocally conditions receipt of federal funds under Title IX on the State's waiver of [sovereign] immunity." In *Pace*, 325 F.3d at 615, "we extend[ed] that portion of the *Pederson* holding to § 504 of the Rehabilitation Act as well." Thus, although § 2000d-7 does not validly abrogate state sovereign immunity, it "may also be viewed as a conditional waiver provision enacted pursuant to Congress's spending power." *Id.*

"That § 2000d-7 authorizes a conditional waiver does not, however, equate with [a state's] having waived its sovereign immunity by accepting federal funds under the Rehabilitation Act." *Id.*. Of course, the two inquiries overlap in most cases. If a federal statute unambiguously conditions receipt of federal funds on a waiver of sovereign immunity, then the courts usually may infer

that the state knowingly and voluntarily waived its immunity by accepting the funds. Indeed, the main purpose of the clear statement rule is to ensure that states understand the bargain: Accept federal funds and thereby waive sovereign immunity.

As with *Pace*, though, this case is not like most cases. "An effective waiver of a state's sovereign immunity is the 'intentional relinquishment or abandonment of a *known* right or privilege.'" *Id.* at 616 (quoting *Coll. Sav. Bank*, 527 U.S. at 682 (emphasis added)). From 1998 to 2000, Tech could not have known that it retained any sovereign immunity to waive. This is so because § 2000d-7, aside from being an unambiguous conditional-waiver statute, is also an "unequivocal statement[ ] of intent to abrogate." *Reickenbacker*, 274 F.3d at 977. At the time, Tech "had little reason to doubt the validity of Congress's asserted abrogation of state sovereign immunity under § 504." *Pace*, 325 F.3d at 616.

Like the defendants in *Pace*, *id.* at 616-17, Tech accepted federal funds after *Seminole Tribe v. Florida*, 517 U.S. 44 (1996) (holding that Congress may abrogate state sovereign immunity only with its section 5 powers), and *City of Boerne v. Flores*, 521 U.S. 507 (1997) (explaining and limiting Congress's section 5 powers). Perhaps Tech should have had the considerable foresight to understand by late 1997 how *Seminole Tribe* and *City of Boerne* combined to limit sharply Congress's power to abrogate the states' sovereign immunity under section 5. *See supra* note 4.

Unfortunately, this court's decision in *Coolbaugh v. Louisiana*, 136 F.3d 430 (5th Cir. 1998), *overruled by Reickenbacker*, 274 F.3d at 981, quickly obscured any such foresight. *Pace*, 325 F.3d at 616-17. In *Cool-*

*baugh*, issued months before King Miller informed Tech of her disability, this court held that the Americans with Disabilities Act, 42 U.S.C. § 12202, validly abrogates state sovereign immunity. *Coolbaugh* implicated the validity of not only § 12202, but also § 2000d-7: "Because Title II of the ADA and § 504 of the Rehabilitation Act offer virtually identical protections, the abrogation analysis with regard to the two statutes is the same." *Pace*, 325 F.3d at 616 n.11 (collecting cases).

We must "'indulge every reasonable presumption against waiver' of fundamental constitutional rights," including state sovereign immunity. *Coll. Sav. Bank*, 527 U.S. at 682 (quoting *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)). Given this court's error (since overruled) in *Coolbaugh*, we cannot reasonably presume that Tech anticipated *Reickenbacker* and knew that it retained sovereign immunity that it would waive by accepting federal funds. *Pace*, 325 F.3d at 616-17. The far more reasonable presumption is that "[b]elieving that [§ 2000d-7] validly abrogated [its] sovereign immunity, [Tech] did not and could not know that [it] retained any sovereign immunity to waive by accepting conditioned federal funds." *Id.* at 616.[8]

---

[8] As in *Pace*, we need not decide whether Tech could knowingly waive its sovereign immunity under § 2000d-7 after the Supreme Court's decision in *Garrett* or our decision in *Reickenbacker*. *See Pace*, 325 F.3d at 616 n.10, 618 n.15. In *Garrett*, 531 U.S. at 360, the Court held that § 12202 did not validly abrogate state sovereign immunity for claims under title I of the ADA. *Garrett* obviously undermined the rationale of *Coolbaugh*, 136 F.3d at 437-38, which did not distinguish between titles I and II. Indeed, *Reickenbacker*, 274 F.3d at 981, overruled *Coolbaugh* based on *Garrett*. Whether (continued...)

4

What looks like a hard but plain choice in retrospectSSaccept funds and thereby waive sovereign immunitySSat the time was in fact an easy and carefree choice for TechSSaccept funds without consequence, because § 2000d-7 appeared already to have abrogated Tech's immunity. Tech's "actions were voluntary, but [it] did not manifest a knowing waiver of that which [it] could not know [it] had the power to waive." *Id.* at 616-17. To hold otherwise and impute to Tech a degree of omniscience would undermine the "central purpose" of the doctrine of state sovereign immunity: "to 'accord the States the respect owed them as' joint sovereigns." *S.C. State Ports Auth.*, 535 U.S. at 765 (quoting *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146).[9]

The order of the district court is REVERSED, and this matter is REMANDED with instruction to dismiss King Miller's § 504 claim against Tech.

---

(...continued)
*Garrett* or *Reickenbacker* reasonably placed Tech on notice that it retained immunity to waive under § 2000d-7 is immaterial to this case, because King Miller filed this suit before either *Garrett* issued in February 2001 or *Reickenbacker* issued in December 2001.

[9] As with *Pace*, 325 F.3d at 618 n.15, our decision today represents something of a Pyrrhic victory for Tech, because it now knows that it has sovereign immunity to waive by accepting federal funds. The rationale of *Pace*, in other words, applies to a limited number of historical cases as a result of fast-developing sovereign-immunity jurisprudence at the Supreme Court and this court.