**James C. SIMMANG Plaintiff,**

v.

**The TEXAS BOARD OF LAW EXAMINERS Comprising Robert E. Valdez, Jack V. Strickland, U. Lawrence Boze, T. Albert Witcher, Don Pozza, Jerry Nugent, Cynthia S. Olsen, Jorge C. Rangel and Jerry Grissom, in Their Official Capacities, Defendants.**

No. 03–CV–650.

United States District Court,
W.D. Texas.
Austin Division.

Sept. 15, 2004.

Thomas E. Reddin, Stacy R. Obenhaus, Gardere Wynne Sewell, LLP, Dallas, TX, for Plaintiff.

James C. Simmang, Dallas, TX, pro se.

Richard E. Salisbury, General Litigation Division Asst. Attorney General, Austin, TX, for Defendants.

## ORDER

YEAKEL, District Judge.

Before the Court are the following: Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) and Defendants' supplement to the motion, which are primarily based on sovereign immunity grounds (Clerk's Document Nos. 1 and 3); Magistrate Judge Andrew Austin's Report and Recommendation regarding the motion and the supplement (Clerk's Document No. 25); Defendants' Objections To Magistrate's Report and Recommendation (Clerk's Document No. 26); and Plaintiff James Simmang's response to Defendants' objections (Clerk's Document No. 27).

This Court referred all pending and future discovery motions, as well as all other non-dispositive motions, and all pending and future dispositive motions in this action to Magistrate Judge Austin pursuant to Title 28 United States Code section 636(b) and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas (Clerk's Document No. 11). On August 5, 2004, Magistrate Judge Austin filed his report and recommendation holding that Defendants' motion to dismiss should be granted in part regarding Simmang's claims against the Texas Board of Law Examiners ("TBLE") under Title II and Title III of the Americans with Disabilities Act of 1990 ("ADA")[1] and all of Simmang's claims against all Defendants pursuant to section 121.010 of the Texas Human Resources Code[2] for lack of subject-matter jurisdiction pursuant to Federal Rule of

Civil Procedure 12(b)(1)(Clerk's Document No. 25). Finally, the report and recommendation suggests that discovery be reopened on all remaining claims. Defendants filed objections to the Magistrate Judge's report and recommendation and Simmang filed a response.

After considering Magistrate Judge Austin's report and recommendation, Defendants' objections, Simmang's response, the applicable law, and the file, this Court is of the opinion that Magistrate Judge Austin's holding is not clearly erroneous nor is it contrary to law and concludes that Defendants' objections should be overruled. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a); *Castillo v. Frank,* 70 F.3d 382, 385–86 (5th Cir.1995).

**IT IS ORDERED** that the Report and Recommendation of the United States Magistrate Judge filed in this cause (Clerk's Document. No. 25) is hereby **APPROVED** and **ACCEPTED** by the Court.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss and Defendants' supplement to the motion to dismiss this action on the grounds of Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (Clerk's Document Nos.1 and 3) are **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against the TBLE under Title II and Title III of the ADA are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff Simmang's claims against all Defendants pursuant to section 121.010 of the Texas Human Resources Code are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that discovery is reopened on the remaining

---

1. 42 U.S.C. §§ 12101–12213.

2. Tex. Hum. Res.Code Ann. § 121.010 (West 2001) (Testing Adults with Disabilities).

claims in this cause of action and the parties shall have ninety days from the date of this order to complete discovery.

**FINALLY IT IS ORDERED** that all other relief requested in Defendants' Motion To Dismiss and Defendants' Supplement to Defendants' Motion Dismiss (Clerk's Document Nos. 1 and 3) are **DENIED.**

## *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

ANDREW W. AUSTIN, United States Magistrate Judge.

Before the Court are Defendants' Motion to Dismiss (Clerk's Doc. No. 1); Defendants' Supplement to Defendants' Motion to Dismiss (Clerk's Doc. No. 1); Plaintiff's Response to Motion to Dismiss (Clerk's Doc. No. 1); Defendants' Supplement to Defendants' Motion to Dismiss (Clerk's Doc. No. 3); and, Plaintiff's Response to Defendants' Supplement to Defendants' Motion to Dismiss (Clerk's Doc. No. 5).[1] A hearing on the motion was held on June 24, 2004.

The District Court referred the dispositive motion to the undersigned Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

On April 10, 2003, Plaintiff James C. Simmang ("Plaintiff") filed this declaratory action in the Dallas district court against the Texas Board of Law Examiners ("TBLE") and its individual members, Robert E. Valdez, Jack V. Strickland, U. Lawrence Boze, T. Albert Witcher, Dan Pozza, Jerry Nugent, Cynthia S. Olsen, Jorge Rangel, and Jerry Grissom, in their official capacities (hereinafter "the individual Defendants"). On September 15, 2003, the Dallas district court transferred the case to this district pursuant to 28 U.S.C. § 1404(a).

Plaintiff, a 1996 law school graduate with a learning disability, seeks admission to the Texas bar. Beginning in 1995, prior to his graduation from law school, Plaintiff contacted TBLE, which administers the Texas bar exam, and inquired about special accommodations for his disability. (Plaintiff's Compl. ¶¶ 12–13). Since that time, Plaintiff, on numerous occasions, has requested double time to complete the bar exam as an accommodation for his learning disability. (*Id.* ¶¶ 20–37). These requests have been denied. (*Id.*) TBLE instead granted Plaintiff time and a half for the bar exam. (*Id.* ¶ 55).

Between 1999 and 2002, Plaintiff took the exam three times within the allotted time and half period, but without success. (*Id.* ¶ 56). While Plaintiff did not attain a passing score on all scaled sections of the exam in the same exam, he attained a passing score on all scaled sections in different exams. (*Id.* ¶ 57). Based on these scores, Plaintiff, in January 2003, requested a further accommodation for his disability—that TBLE certify that Plaintiff passed the Texas bar exam based on his separate passing scores in the three sec-

---

**1.** Also before the Court are Defendants' Advisory to the Court (Clerk's Doc. No. 17); Defendants' Supplemental Brief on Comity Issues (Clerk's Doc. No. 22); and, Plaintiff's Supplemental Brief on Comity Issues (Clerk's Doc. No. 24).

tions of the exam. (*Id.* ¶¶ 60–62). This request was also denied. (*Id.* ¶ 65).

Plaintiff alleges that Defendants' conduct in discouraging him from applying to sit for the bar exam and in denying him double time for the test and other accommodations is in violation of Title II and Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and, § 121.010 of the Texas Human Resources Code. Plaintiff seeks declaratory and equitable relief.

Defendants seek dismissal, under both Rule 12(b)(1) and Rule 12(b)(6), primarily on sovereign immunity grounds.

## II. ANALYSIS

### A. Rule 12(b)(1) Standard of Review

■ Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court. *See* FED. R. CIV. P. 12(b)(1); *Rodriguez v. Texas Comm'n on the Arts,* 992 F.Supp. 876, 878 (N.D.Tex. 1998), *aff'd,* 199 F.3d 279 (5th Cir.2000). Where a defendant attacks jurisdiction based solely on the allegations of the complaint, as here, the plaintiff's factual allegations are presumed to be true. *See O'Rourke v. United States,* 298 F.Supp.2d 531, 534 (E.D.Tex.2004); *Rodriguez,* 992 F.Supp. at 878. Dismissal for lack of subject matter jurisdiction is appropriate when the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *See Warnock v. Pecos County, Tex.,* 88 F.3d 341, 343 (5th Cir.1996); *O'Rourke,* 298 F.Supp.2d at 534. Where a state's sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity must be dismissed only under Rule 12(b)(1) and not with prejudice. *Warnock,* 88 F.3d at 343.[2] When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should consider the jurisdictional attack before addressing the attack on the merits. *Rodriguez,* 992 F.Supp. at 879.

### B. Eleventh Amendment Immunity

Defendants argue that they, as a state agency and officials thereof, enjoy Eleventh Amendment immunity and are thus shielded from all of Plaintiff's claims. Defendants further contend that the *Ex parte Young* exception to the state's Eleventh Amendment immunity does not apply.[3]

#### 1. TBLE

■ The Eleventh Amendment renders the States immune from any suit in law or equity brought by a State's own citizen without their consent. *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 1985, 158 L.Ed.2d 820 (2004). Thus, the Eleventh Amendment bars suit in federal court against a state or state entity, as opposed to a state official, regardless of whether

---

**2.** A state's Eleventh Amendment immunity is jurisdictional in character. *See Watson v. Texas,* 261 F.3d 436, 440 n. 5 (5th Cir.2001).

**3.** Initially, the individual Defendants claimed that they were entitled to official immunity. *See* Defs. Mot. at 5 (Clerk's Doc. No. 1). They now concede that the defense of official immunity does not apply here given that Plaintiff seeks no monetary damages. *See* Advisory to the Court at 3 (Clerk's Doc. No. 3). The Court concurs. In official-capacity suits, such as this one, the defenses of absolute (official) immunity and qualified immunity are unavailable. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). *See Turner v. Houma Mun. Fire and Police Civil Serv. Bd.,* 229 F.3d 478, 483 (5th Cir.2000). Generally, the only immunities available to a defendant in an official-capacity action are those that the governmental entity possesses. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991).

money damages or injunctive relief is sought. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Briggs v. Mississippi,* 331 F.3d 499, 503 (5th Cir.2003), *cert. denied,* 540 U.S. 1108, 124 S.Ct. 1070, 157 L.Ed.2d 894 (2004).

■ The state's Eleventh Amendment immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the state. *See Perez v. Region 20 Educ. Serv. Center,* 307 F.3d 318, 326 (5th Cir. 2002). It is undisputed here that TBLE is an "arm" of the State of Texas. TBLE is entrusted with determining "the eligibility of candidates for examination for a license to practice law" in Texas. TEX. GOV'T CODE ANN. § 82.004 (Vernon 1998). Moreover, TBLE acts under the instructions of the Texas Supreme Court. *Id.* As such, the Eleventh Amendment bars Plaintiff's suit against TBLE unless Congress clearly and validly abrogated the state's sovereign immunity in enacting Title II and Title III of the ADA and § 504 of the Rehabilitation Act.

### Title II

■ Congress may abrogate state sovereign immunity when it both unequivocally intends to do so and, in its abrogation, acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Reickenbacker v. Foster,* 274 F.3d 974, 977 (5th Cir.2001). Both the ADA and the Rehabilitation Act contain unequivocal statements of congressional intent to abrogate the sovereign immunity of the individual States. *See* 42 U.S.C. § 12202; 42 U.S.C. § 2000d–

7(a)(1); *Reickenbacker,* 274 F.3d at 977. The question therefore is whether Congress acted pursuant to a valid grant of constitutional authority. *See Lane,* 124 S.Ct. at 1985.

Congress can abrogate a state's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of the Fourteenth Amendment. *Lane,* 124 S.Ct at 1985. The Supreme Court has previously held that Title I of the ADA is not a valid exercise of Congress' § 5 power and therefore not a valid abrogation of the States' sovereign immunity. *See Garrett,* 531 U.S. at 374, 121 S.Ct. 955. While not until recently did the Supreme Court address sovereign immunity in relation to Title II of the ADA, *see Lane,* 124 S.Ct. at 1978, the Fifth Circuit has held that the accommodations obligations imposed by Title II and § 504 of the Rehabilitation Act are not a valid exercise of Congressional power under § 5 of the Fourteenth Amendment and thus do not abrogate the state's Eleventh Amendment immunity. *See Miller v. Texas Tech Univ. Health Sciences Center,* 330 F.3d 691, 693 (5th Cir.2003); *Pace v. Bogalusa City School Bd.,* 325 F.3d 609, 613 (5th Cir.2003); *Reickenbacker,* 274 F.3d at 983. Leaving aside the Rehabilitation Act for a moment, the Court turns to the main issue here—whether the Supreme Court's decision in *Lane* effectively overrules the Fifth Circuit's holding in *Reickenbacker.*

In *Lane,* a class of paraplegics alleged that Tennessee had denied them physical access to the state's courts in violation of Title II of the ADA.[4] The Court upheld

---

4. Title II of the ADA provides, in relevant part:
 [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.
 42 U.S.C. § 12132.

Title II as a valid exercise of Congress' § 5 authority under the Fourteenth Amendment as applicable to cases implicating the fundamental right of access to the courts. *See Lane*, 124 S.Ct. at 1994. In reaching its conclusion, the Supreme Court made abundantly clear that its holding was limited to cases involving the fundamental right of access to the courts:

> Petitioner urges us both to examine the broad range of Title II's applications all at once, and to treat that breadth as a mark of the law's invalidity... Whatever might be said about Title II's other applications, the question presented here is not whether Congress can validly subject the States to private suits for money damages for failing to provide reasonable access to hockey rinks, or even to voting booths, but whether Congress had the power under § 5 to enforce the *constitutional* right of access to the courts. Because we find that Title II unquestionably is valid § 5 legislation *as it applies to the class of cases implicating the accessibility of judicial services,* we need go no further. *Id.* (emphasis added).

*Lane*, 124 S.Ct. at 1992–93. *See also id.* at 1994 n. 20.[5]

This holding is founded squarely on the *source* of the plaintiffs' encroached rights. The Court found that the First Amendment, the Due Process Clause of the Four-

teenth Amendment, and the Confrontation Clause of the Sixth Amendment, as applied to the States via the Fourteenth Amendment, all guarantee and protect, in one form or another, an individual's right of the access to the courts. *See Lane*, 124 S.Ct. at 1988. In light of the constitutional (and thus fundamental) nature of this right, the *Lane* Court found that access to the courts was an appropriate area for § 5 "prophylactic legislation." *See id.* at 1992.

In the instant case, Plaintiff has not demonstrated that TBLE's refusal to provide double time for the bar exam amounts to a deprivation of a fundamental right akin to the one implicated in *Lane*. The right to practice law is not a fundamental right nor does Plaintiff argue that it is. This Court's research indicates that every court that has addressed the issue has concluded that the practice of law is not a fundamental right. For example, in *Tolchin v. Supreme Court of the State of N.J.*, 111 F.3d 1099, 1114 (3rd Cir.1997), *cert. denied*, 522 U.S. 977, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997), the court stated that "[t]he Supreme Court has indicated that the right to practice law is not a fundamental right for the purposes of the Fourteenth Amendment.... Moreover, we have flatly rejected the argument that the practice of law is a fundamental right protected by the Equal Protection Clause" (citations omitted).[6]

---

**5.** "Because this case implicates the right of access to the courts, we need not consider whether Title II's duty to accommodate exceeds what the Constitution requires in the class of cases that implicate only *Cleburne's* prohibition on irrational discrimination."

**6.** *See also Kirkpatrick v. Shaw*, 70 F.3d 100, 103 (11th Cir.1995) ("The right to practice law is not a fundamental right"); *Younger v. Colorado · State Bd. of Law Examiners*, 625 F.2d 372, 377 n. 3 (10th Cir.1980) ("We do not feel that entry into law practice is a 'fundamental right'"); *Lombardi v. Tauro*, 470

F.2d 798, 800 n. 4 (1st Cir.1972), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973) ("Appellant urges us to hold that the pursuit of one's chosen occupation is a 'fundamental right' ... we are most hesitant to expand the category of 'fundamental rights' beyond those which clearly have a constitutional underpinning"); *Leclerc v. Webb*, 270 F.Supp.2d 779, 798 (E.D.La.2003) (finding no constitutional right to admission to a state's bar); *Verner v. State of Colorado*, 533 F.Supp. 1109, 1116 (D.Colo.1982), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2175, 80 L.Ed.2d 558 (1984) ("A person's 'right' or 'privilege' in the

Rather, Plaintiff's allegations seem to implicate Title II's prohibition on "irrational disability discrimination." *See Lane*, 124 S.Ct. at 1988 (distinguishing Title II's prohibition on classifications based on disability from Title II's enforcement of basic constitutional guarantees). As discussed above, the Supreme Court based its conclusion in *Lane* on the state's deprivation of a fundamental right and not on "irrational" discrimination against the disabled. The holding in *Lane* is thus inapplicable here. *See McNulty v. Bd. of Educ. of Calvert County*, No. Civ.-A-DKC-2003-2520, 2004 WL 1554401, at *3 (D.Md. July 8, 2004) (declining to extend *Lane*'s holding to education claims under Title II of the ADA because education had not been identified as a fundamental right). As such, pending further guidance from the Supreme Court or the Fifth Circuit, *Reickenbacker* governs the case at hand.

■ Thus, the rationale of *Lane* does not require this Court to conclude that the Fifth Circuit's decision in *Reickenbacker* is no longer valid. *Lane* involved a fundamental right, and this case does not. Accordingly, this Court is bound by the decision in *Reickenbacker*. There, the Circuit held that the accommodation obligation imposed by Title II exceeded that imposed by the Constitution and was thus not a valid abrogation of state sovereign immunity. *Reickenbacker*, 274 F.3d at 983. Therefore, TBLE is entitled to Eleventh Amendment immunity from Plaintiff's Title II claims.

### Title III

■ Title III of the ADA prohibits public accommodations from discriminating against individuals because of their disabilities. *See* 42 U.S.C. §§ 12181–12189; *Lane*, 124 S.Ct. at 1984; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681–82, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). Ordinarily, Title III is invoked by plaintiffs complaining of disability discrimination by private entities. *See, e.g., Bloom v. Bexar County, Tex.*, 130 F.3d 722, 726 (5th Cir.1997) ("Title III expressly does not apply to public entities"). As a result, the issue of sovereign immunity in the context of Title III has remained an open question of federal law post-*Garrett*.[7] Notwithstanding the

---

practice of law, however, has never been among those held to be 'fundamental' so only minimal scrutiny under the rational basis test is required to evaluate claims of deprivation of such a 'right' without due process"); *Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036, 1038 (D.N.J.1975), *aff'd*, 546 F.2d 418 (3rd Cir.1976) (there is no fundamental right to practice law); *Huffman v. Montana Supreme Court*, 372 F.Supp. 1175, 1177 (D.Mont.1974), *aff'd*, 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974) ("The authority to practice law is not a fundamental right such as the right to the freedom of speech, the right to vote or the right of interstate travel").

The Supreme Court has held that a person denied admission to a state bar is entitled to procedural due process before denial, but in doing so it did not conclude that the practice of law is a fundamental right. *Willner v. Comm. on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) ("[T]he requirements of procedural due process must be met before a State can exclude a person from practicing law"); *Schware v. Bd. of Bar Examiners of the State of New Mexico*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) ("A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment").

7. This Court's research yielded no post-*Garrett* federal case law on this issue. Pre-*Garrett* case law on this issue did not question the validity of Congress' statement of abrogation contained in § 12202. *See Ware v. Wyoming Bd. of Law Examiners*, 973 F.Supp. 1339, 1352 (D.Wyo.1997), *aff'd*, 161 F.3d 19 (10th Cir.1998); *Bartlett v. New York State Bd. of Law Examiners*, 970 F.Supp. 1094, 1131 (S.D.N.Y.1997), *aff'd in part, vacated in part by*, 226 F.3d 69 (2d Cir.2000). Even though Defendants assert that the Eleventh Amend-

lack of authority on this specific issue, the rationale behind *Lane,* 124 S.Ct. 1978, *Garrett,* 531 U.S. 356, 121 S.Ct. 955, and *Reickenbacker,* 274 F.3d 974, lead this Court to conclude that Congress did not validly abrogate the state's sovereign immunity in enacting Title III and thus Plaintiff's Title III claim against TBLE is also barred by the Eleventh Amendment.[8] *See* Symposium, *The End of the Beginning for Election Reform,* 9 GEO. J. ON POVERTY L. & POL'Y 285, 355 (2002) ("[W]hile the Supreme Court has not yet ruled as to whether there is an Eleventh Amendment sovereign immunity problem about getting damages from the state if you're litigating under Title II or Title III [of the ADA], the Court has said that you can't get money damages against the state if you're bringing an employment claim and their rational [*sic*] could go over to Title II and Title III").

Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity from suits under the ADA. *See* § 12202; *Lane,* 124 S.Ct. at 1985. Nevertheless, under *Reickenbacker* and for the reasons set forth above in the discussion of Title II, this Court finds that to the extent Title III is read to contain an abrogation of the States' Eleventh Amendment immunity, as applied to this case implicating access to the bar examination,

that abrogation is not a valid exercise of Congress' § 5 authority.

"Section 5 legislation is valid if it exhibits 'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Lane,* 124 S.Ct. at 1986 (quoting *City of Boerne v. Flores,* 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)). In *Reickenbacker,* 274 F.3d at 983, the Fifth Circuit held that because Title II imposed an accommodation obligation on public entities far exceeding that imposed by the Constitution, which does not impose an accommodation obligation, Title II failed the proportionality and congruence test and thus was not a valid exercise of congressional power. Like Title II, § 12189 imposes an affirmative obligation on public entities. It requires a state, when it administers licensing or professional examinations, to offer such examinations "in a place or manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. Clearly, § 12189 does more than merely prohibit unconstitutional discrimination against the disabled. *See Reickenbacker,* 274 F.3d at 983. Because the accommodation obligation of § 12189 exceeds that imposed by the Constitution and no fundamental right

---

ment immunity bars *all* of Plaintiff's claims, they cite no authority for the proposition that sovereign immunity shields a state against claims under Title III of the ADA. Rather, Defendants' position has been, at least until recently, that Title III applies to private entities only. *See* Defs.' Mot. at 15.

8. Although the Court refers to "Title III" for the sake of simplicity, its finding is limited to § 12189, the provision at issue here. Section 12189 provides in relevant part: "any *person* that offers examinations ... related to applications, licensing, certification, or credentialing for ... professional ... purposes shall offer such examinations ... in a place or

manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189 (emphasis added). "Person" is defined to have the same meaning as in § 701 of the Civil Rights Act of 1964, 42 U.S.C. § 12111(7), which defines "person" to include governments and governmental agencies. 42 U.S.C. § 2000e(a). Thus, while other provisions of Title III might arguably apply only to private entities, *see Bloom,* 130 F.3d at 726, § 12189, by its very terms, applies to state governments and state agencies. *Pazer v. New York State Bd. of Law Examiners,* 849 F.Supp. 284, 286–87 (S.D.N.Y.1994).

is at stake here as it was in *Lane*, TBLE is entitled to sovereign immunity from Plaintiff's Title III claim.

### Rehabilitation Act

 As noted above, Fifth Circuit precedent establishes that Congress did not validly abrogate state sovereign immunity for claims under the Rehabilitation Act when it enacted § 2000d–7. *See Reickenbacker*, 274 F.3d at 983. A state, however, may waive its sovereign immunity by consenting to suit. *See Miller*, 330 F.3d at 693. A state may waive its immunity for its own reasons or in exchange for some "gratuity" from Congress. *Id.* In other words, Congress may require the States to waive their sovereign immunity as a condition for receiving federal funds. *See Pace*, 325 F.3d at 615. In order to do so, Congress must manifest a clear intent to condition participation in the programs funded under the relevant Act on a state's consent to waive its constitutional immunity. *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Section 504 of the Rehabilitation Act, as amended by § 2000d–7, conditions receipt of federal funds on a state's waiver of sovereign immunity. *See id.* (" § 2000d–7 may also be viewed as a conditional waiver provision enacted pursuant to Congress's spending power").

 The fact that § 2000d–7 authorizes a conditional waiver does not automatically mean, however, that a state waived its sovereign immunity by accepting federal funds under the Rehabilitation Act. *See Pace*, 325 F.3d at 615. "An effective waiver of a state's sovereign immunity is the intentional relinquishment or abandonment of a *known* right or privilege." *Miller*, 330 F.3d at 694 (internal quotation marks omitted) (emphasis in original). As such,

to constitute a valid waiver of immunity, the state or state agency had to know, at the time it accepted federal funds, that it was waiving its sovereign immunity by accepting such funds. *See id.* at 695.

 Here, it is clear that TBLE is entitled to sovereign immunity from Plaintiff's Rehabilitation Act claim under *Reickenbacker* and its progeny *unless* TBLE is a recipient of federal funds *and* knowingly waived its sovereign immunity by accepting such funds. In their Rule 12(b)(6) motion to dismiss, Defendants maintain that the Rehabilitation Act does not apply because TBLE is not a recipient of federal funds. As such, a factual issue exists. Because resolution of this remaining immunity issue depends in part on whether TBLE was a recipient of federal funds during the relevant time period and further discovery on this particular issue is necessary, Defendants' motion to dismiss Plaintiff's Rehabilitation Act claim against TBLE should be denied at this time. Defendants may re-urge their motion at the close of discovery on the issue of federal funding.

### 2. Individual Defendants

 The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900. The general rule is that relief sought nominally against a state officer is in fact against the sovereign if the decree would operate against the latter. *Id.* However, under the *Ex parte Young* doctrine,[9] suits for prospective injunctive relief against state officials acting in violation of federal law are allowed. *Frew v. Hawkins*, 540 U.S. 431, 124 S.Ct. 899, 903, 157 L.Ed.2d 855 (2004); *AT&T Communications v. BellSouth Telecommunications Inc.*, 238

---

9. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

F.3d 636, 643 (5th Cir.2001); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir.1998), *cert. denied,* 528 U.S. 851, 120 S.Ct. 130, 145 L.Ed.2d 110 (1999).

 For the *Ex parte Young* exception to apply, the plaintiff's suit must (1) allege a violation of federal law; (2) be brought against individual persons in their official capacities as agents of the state; and, (3) seek declaratory or injunctive relief in nature and prospective in effect. *Aguilar,* 160 F.3d at 1054. In determining whether the exception applies, the court need only conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)).

Defendants maintain that *Ex parte Young* is inapplicable here for the following reasons: (a) Title II of the ADA is not enforceable against state officials; (b) Plaintiff seeks retroactive relief rather than prospective relief; and, (c) the type of relief sought would offend comity principles. The Court considers these arguments in turn.

 First, Defendants are mistaken in their assertion that Title II of the ADA is unenforceable against state officials under the *Ex parte Young* doctrine. All of the federal appellate courts that have addressed this issue have ruled that Title II of the ADA, regardless of whether it is a valid abrogation of the states' Eleventh Amendment immunity, is indeed enforceable against state officials pursuant to the *Ex parte Young* doctrine. *See Chaffin v. Kansas State Fair Bd.,* 348 F.3d 850, 866–67 (10th Cir.2003); *Shepard v. Irving,* 77 Fed.Appx. 615, 620 (4th Cir.2003) (unpublished); *Henrietta D. v. Bloomberg,* 331 F.3d 261, 288–89 (2d Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004); *Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1187–88 (9th Cir. 2003); *Bruggeman v. Blagojevich,* 324 F.3d 906, 912–13 (7th Cir.2003); *Koslow v. Pennsylvania,* 302 F.3d 161, 179 (3rd Cir. 2002), *cert. denied,* 537 U.S. 1232, 123 S.Ct. 1353, 155 L.Ed.2d 196 (2003); *Klingler v. Director, Dep't of Revenue,* 281 F.3d 776, 777 (8th Cir.2002); *Carten v. Kent State Univ.,* 282 F.3d 391, 396 (6th Cir.2002).[10]

Nor has the Fifth Circuit held that Title II is unenforceable against state officials under the *Ex parte Young* exception. To the contrary, the Fifth Circuit twice, in addressing sovereign immunity in the context of Title II, has indicated, albeit in *dicta,* that the *Ex parte Young* exception is available to Title II plaintiffs. *See Pace,* 325 F.3d at 613 n. 4 ("An individual seeking solely prospective relief may also sue a state official in his official capacity under *Ex parte Young* ... In this case, however, Pace has not named any state officials as defendants") (internal citation omitted); *Reickenbacker,* 274 F.3d at 976 n. 9 (finding that the *Ex parte Young* exception could not be properly invoked because plaintiffs had amended their complaint to remove the state officials as defendants thereby leaving the state as the sole defendant in the case).[11]

---

**10.** Neither the Eleventh Circuit nor the District of Columbia Circuit appear to have addressed this particular issue. The First Circuit declined ruling on the issue pending the Supreme Court's decision in *Lane. See Nieves–* *Marquez v. Puerto Rico,* 353 F.3d 108, 127 (1st Cir.2003).

**11.** It is worth noting that, contrary to Defendants' position, the Fifth Circuit, in *Reicken-*

Moreover, the Supreme Court, as well as the Fifth Circuit, has implicitly rejected Defendants' argument that where legislation invalidly abrogates a state's sovereign immunity the *Ex parte Young* exception is unavailable. In *Garrett,* where the Supreme Court addressed Title I of the ADA, the Court stated:

> Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young.*

*Garrett,* 531 U.S. at 374 n. 9, 121 S.Ct. 955. *See Ysleta Del Sur Pueblo v. Laney,* 199 F.3d 281, 285–86 (5th Cir.2000), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2007, 146 L.Ed.2d 957 (2000) ("If however, the particular statute has not properly abrogated state sovereign immunity, the plaintiff may nevertheless challenge the actions of the state officials under the *Ex parte Young* doctrine, for prospective relief"). If *Ex parte Young* is available to Title I plaintiffs, it follows that the doctrine is also available to Title II plaintiffs suing state officials for injunctive relief.[12] As such, this Court finds that Title II of the ADA is enforceable against state officials under *Ex parte Young.*

The Court now turns to the type of relief sought by Plaintiff. In his Complaint, Plaintiff seeks the following by way of relief: (1) declaration that Titles II & III of the ADA, the Rehabilitation Act, and § 121.010 of the Texas Human Resources Code apply to TBLE and the Texas bar examination and that TBLE has violated these statutes; and, (2) an order directing TBLE to certify that Plaintiff has passed the Texas bar examination or an order directing TBLE to consider and grant Plaintiff double time to complete the exam. *See* Compl. at 18–19. Defendants argue that the injunctive relief sought by Plaintiff, at least to the extent it asks TBLE to certify that Plaintiff has passed the bar exam based on past passing scores, is retroactive, and thus *Ex parte Young* is inapplicable.

■ The Court disagrees. For *Ex parte Young* purposes, retroactive relief is that which compensates a plaintiff, through monetary damages or restitution, for the defendant state official's past breach of a legal duty or past violation of federal law. *See Frew,* 124 S.Ct at 903; *Verizon,* 535 U.S. at 646, 122 S.Ct. 1753; *Missouri v. Jenkins,* 491 U.S. 274, 278, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Papasan v. Allain,* 478 U.S. 265, 278–79, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cox v. City of Dallas, Tex.,* 256 F.3d 281, 308 (5th Cir. 2001); *Brennan v. Stewart,* 834 F.2d 1248, 1253 (5th Cir.1988). Plaintiff does not seek damages or restitution, nor is he asking for any sort of compensation. Rather, the relief he seeks consists of declarations and a mandatory injunction.

Lastly, Defendants contend that comity principles counsel against the application of the *Ex parte Young* doctrine in this instance. Relying on both *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27

---

backer, left the *Ex parte Young* doctrine intact while holding that Title II was not a valid abrogation of the state's sovereign immunity. *See Reickenbacker,* 274 F.3d at 976, 984.

12. *Ex parte Young* was neither discussed nor mentioned in *Lane.*

L.Ed.2d 669 (1971), and *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438, Defendants argue that comity considerations are at play here given the State of Texas's important interest in regulating bar admission.

 The notion of comity reflects "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44, 91 S.Ct. 746. Principles of comity apply whenever federal courts are asked to review state action or supersede state proceedings. *Patsy v. Bd. of Regents of State of Florida*, 457 U.S. 496, 533, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (Powell, J. dissenting). For example, the principle of comity is an integral basis of the abstention doctrine, which allows federal courts to decline jurisdiction over cases interfering with pending state criminal proceedings and certain state civil proceedings. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *Younger*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669.[13]

An inquiry into whether *Ex parte Young* applies to allow an action to proceed against state officials may also implicate comity principles. *See Coeur d'Alene*, 521 U.S. at 277, 117 S.Ct. 2028 ("The *Young* exception may not be applicable if the suit 'would upset the balance of federal and state interests that it embodies' ") (quoting *Papasan*, 478 U.S. at 277, 106 S.Ct. 2932). In *Coeur d'Alene*, the Supreme Court held that *Ex parte Young* did not apply because the action was the functional equivalent of a quiet title action that implicated special sovereignty interests, namely the state's sovereign interest in its lands and navigable waters. *Id.* at 281, 287, 117 S.Ct. 2028. While some courts consider *Coeur d'Alene* a limitation on the *Ex parte Young* doctrine and inquire as to whether the relief requested implicates a special or core state sovereignty interest, *see, e.g., Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1134 (10th Cir.2001); *Martin v. Taft*, 222 F.Supp.2d 940, 961 (S.D.Ohio 2002), the Fifth Circuit has rejected the idea that *Coeur d'Alene* affects the traditional application of *Ex parte Young*. *See AT&T*, 238 F.3d at 648; *Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1039 (5th Cir.1998), *cert. denied*, 525 U.S. 982, 119 S.Ct. 444, 142 L.Ed.2d 399 (1998).[14]

---

13. Defendants concede that there are no pending state proceedings here. *See* Defs.' Supp. Br. at 4. Therefore, they do not seriously argue for *Younger* abstention. *Id.*

14. The Court does not call into question the state's legitimate interest in its regulation of persons authorized to practice law. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–33, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). As noted above, however, this Circuit's *Ex parte Young* case law does not consider the nature of the state's sovereign interests beyond the holding in *Coeur d'Alene*. *See Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 501–502 (5th Cir.2001), *cert. denied*, 535 U.S. 988, 122 S.Ct. 1541, 152 L.Ed.2d 467 (2002).

Nonetheless, even if the Fifth Circuit recognized the "special state sovereignty interest" exception, the state's interest in regulating admission to the bar does not equate to the special sovereignty interests at issue in *Coeur d'Alene*. *See Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233–34 (10th Cir.2001) (finding that action challenging Colorado Supreme Court's bar admission rules did not fall within the *Coeur d'Alene* exception thus the *Ex parte Young* doctrine was available); *Buchwald v. Univ. of New Mexico Sch. of Medicine*, 159 F.3d 487, 495 n. 6 (10th Cir.1998) (*Coeur d'Alene* exception does not apply because plaintiff's requested relief ordering admission to state university medical school did not affect a core aspect of the state's sovereignty).

In short, a "straightforward inquiry" of Plaintiff's Complaint leads to the conclusion that, pursuant to *Ex parte Young,* Plaintiff's federal claims against the individual Defendants under Title II and III of the ADA and the Rehabilitation Act are not barred by the Eleventh Amendment. *See Verizon,* 535 U.S. at 645, 122 S.Ct. 1753; *Lipscomb,* 269 F.3d at 502.

## C. State Law Claim

Defendants move for dismissal of Plaintiff's state law claim under § 121.010 of the Texas Human Resources Code[15] on several grounds, including sovereign immunity. Because this Court finds that the Eleventh Amendment bars Plaintiff's state law claim against Defendants, it does not reach the other arguments put forth by Defendants.[16]

▆▆▆▆ The Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court. *Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 540–41, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002); *Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900. *See Hernandez v. Texas Dep't of Human Serv.,* 91 Fed.Appx. 934, 935 (5th Cir.2004) (not designated for publication); *Mohler v. State of Miss.,* 782 F.2d 1291, 1293 (5th Cir.1986). There is no indication that the State of Texas waived its sovereign immunity in state courts for violations of § 121.010. Absent clear and unambiguous statutory language establishing a waiver of immunity, sovereign immunity protects the state, its agencies and officials from suit in state court. *See City of Mexia v. Tooke,* 115 S.W.3d 618, 620–21 (Tex.App.-Waco 2003, pet. granted).

▆▆▆▆ Even if Texas waived sovereign immunity in its own courts for claims under § 121.010, such a waiver would not operate as a waiver of Eleventh Amendment immunity from suit in federal court. *See Hernandez,* 91 Fed.Appx. at 935; *Martinez v. Texas Dep't of Criminal Justice,* 300 F.3d 567, 575 (5th Cir.2002). A state's consent to being sued in federal court must be unequivocally expressed. *Martinez,* 300 F.3d at 575. Plaintiff has failed to establish the State of Texas' consent to suit in federal court for violations of § 121.010. *See Perez,* 307 F.3d at 332 (finding no waiver because statute cited by plaintiff did not expressly waive sovereign immunity in federal court); *Williams v. Houston Firemen's Relief and Retirement Fund,* 121 S.W.3d 415, 435 (Tex.App.-Houston [1st Dist.] 2003, no pet.) ("A party suing a governmental entity must establish the state's consent, by reference either to a statute or to express legislative permission"). Therefore, regardless of the

---

**15.** Section 121.010 provides, in relevant part:

(a) A test that evaluates an adult with a disability for a job position in business, government or industry, or a test to determine that person's educational level, must measure individual abilities and not specific disabilities.

\* \* \* \* \* \*

(c) The examiner may use as an alternate form of testing any procedure or adaption that will help ensure the best performance possible by an adult with a disability, including oral or visual administration of the test, oral or manual response to the test, the use of readers, tape recorders, interpreters, large print, or braille text, the *removal of time constraints,* and multiple testing sessions.

(d) An examiner shall select and administer a test to an examinee who has a disability that impairs sensory, manual, or speaking skills so that the test accurately reflects the factor the test is intended to measure and does not reflect the examinee's impaired sensory, manual, or speaking skills.

\* \* \* \* \* \*

TEX. HUM. RES. CODE ANN. § 121.010 (Vernon 2001) (emphasis added).

**16.** Defendants also argued that § 121.010 did not apply to Plaintiff's claims.

fact that Plaintiff seeks no monetary damages, the Eleventh Amendment bars his state law claim against *all* Defendants. *See Earles*, 139 F.3d at 1039 (state law claims not cognizable under *Ex parte Young* because state officials continue to be immunized from suit in federal court on alleged violations of state law brought under the federal court's supplemental jurisdiction); *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir.1990) (a claim that state officials violated state law in carrying out their official responsibilities is a claim against the state and is therefore barred by the Eleventh Amendment); *Mohler*, 782 F.2d at 1293 (when only state law is involved, the Eleventh Amendment immunity jurisdictional bar applies to state agencies and officials acting in their official capacity regardless of the relief sought).

As such, Plaintiff's claim under § 121.010 of the Texas Human Resources Code is barred by the Eleventh Amendment and should be dismissed under Rule 12(b)(1).

**D. Rule 12(b)(6) Motion**

Under Federal Rule of Civil Procedure 12(b)(6), a "claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir.2002), *cert. denied*, 537 U.S. 1200, 123 S.Ct. 1287, 154 L.Ed.2d 1041 (2003). The complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir.2003). However, a plaintiff must plead specific facts, not mere conclusory allegations. *Id.*

Under the Rehabilitation Act of 1973, no qualified disabled individual may be denied benefits or discriminated against solely on the basis of a disability under any program or activity receiving federal funding. *See* 29 U.S.C. § 794. To state a valid claim under § 504 of the Rehabilitation Act, a plaintiff must allege that the specific program or activity with which he was involved receives or directly benefits from federal financing assistance. *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir.1997), *cert. denied*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998). Plaintiff so alleges. *See* Compl. at 16, ¶ 75. Defendants nevertheless move to dismiss Plaintiff's Rehabilitation Act claim based on Julia Vaughan's assertion that TBLE did not receive federal funding during the relevant time period. *See* Vaughan's Affidavit, ¶ 4. By submitting Ms. Vaughan's affidavit, Defendants seek to convert their 12(b)(6) motion into a Rule 56 motion for summary judgment.

Under Rule 12(b), a party may seek to convert a 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment by attaching materials outside the pleadings. *See* FED. R. CIV. P. 12(b); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 444 n. 1 (5th Cir.1998). However, the Court has complete discretion to determine whether or not to accept any such materials. *See Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). For example, if little or no discovery has been conducted on the issue for which the extraneous material was submitted, the Court may decline to consider the attached materials and decline to convert the motion into a summary judgment motion. *See Rivera v. New York City Health & Hosp. Corp.*, 191 F.Supp.2d 412, 424–25 (S.D.N.Y.2002); *Jordan v. Washington Mutual Bank*, 211 F.Supp.2d 670, 674 (D.Md.2002); *Kurdyla v. Pinkerton Security*, 197 F.R.D. 128, 131 (D.N.J.2000). If the Court decides to accept matters outside the pleading, howev-

er, it must convert the motion to dismiss into one for summary judgment. *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir.1998).

Because Plaintiff has conducted little discovery on the issue of federal funding, Defendants' 12(b)(6) motion should not be converted into a Rule 56 motion for summary judgment at this time. Plaintiff should be afforded an opportunity to conduct discovery on this issue. However, once discovery has been conducted on this issue, Defendants may re-urge their motion for summary judgment.

■■■ Accordingly, based on Plaintiff's allegations, which state a valid claim under § 504 of the Rehabilitation Act, Defendants' motion to dismiss as to this claim with respect to the individual Defendants should be denied.[17]

### E. Conclusion

For the reasons stated above, all claims against Defendant TBLE, with the exception of the Rehabilitation Act claim, should be dismissed on Eleventh Amendment immunity grounds. Defendants' Motion to Dismiss the Rehabilitation Act claim against TBLE should be denied at this time pending discovery on the issue of federal funding. Pursuant to the *Ex parte Young* doctrine, Defendants' Motion to Dismiss Plaintiff's ADA and Rehabilitation Act claims against the individual Defendants should be denied. Defendants' Motion to Dismiss Plaintiff's state law claim under § 121.010 of the Texas Human Re-

sources Code should be granted as to all Defendants.

### III. RECOMMENDATIONS

The Magistrate Court **RECOMMENDS** the following:

(a) that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Dismiss (Clerk's Doc. No. 1);

(b) that the District Court **DISMISS WITHOUT PREJUDICE** Plaintiff's claims against TBLE under Title II and Title III of the ADA and § 121.010 of the Texas Human Resources Code for lack of subject matter jurisdiction pursuant to Rule 12(b)(1);

(c) that the District Court **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claim under § 121.010 of the Texas Human Resources Code for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); **AND,**

(d) that the District Court **RE–OPEN DISCOVERY** on the claims not dismissed.[18]

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987).

A party's failure to file written objections to the proposed findings and recom-

---

**17.** As previously discussed, all of Plaintiff's claims against TBLE, with the possible exception of Plaintiff's claim under the Rehabilitation Act, are barred by the Eleventh Amendment.

**18.** Discovery had previously been abated pending the resolution of the Defendant's immunity issues. *See* Order dated November 12, 2003 (Clerk's Doc. No. 8). Given the recommendation that the case may continue as to some of the claims, discovery should now be permitted.

mendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53, 106 S.Ct. 466, 472–74, 88 L.Ed.2d 435 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

The Clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

August 5, 2004.