United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 15, 2005**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 22, 2005

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-10190

LUCINDA G. MILLER; ELAINE KING-MILLER,

Plaintiffs-Appellees,

VERSUS

TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, ET AL

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas, Amarillo Division

Consolidated with
No. 02-30318
No. 02-30369

THEODORE JOHNSON,

Plaintiff-Appellee,

VERSUS

LOUISIANA DEPARTMENT OF EDUCATION, ET AL

Defendants,

LOUISIANA DEPARTMENT OF EDUCATION; STATE OF LOUISIANA;
PRESIDENT OF LOUISIANA STATE UNIVERSITY SYSTEM;
BOARD OF REGENTS

                                        Defendants-Appellants,

                              and

                    LYNN AUGUST

                                        Plaintiff-Appellee
                         VERSUS

       SUZANNE MITCHELL; MAE NELSON; ED BARRAS; DEPARTMENT
         OF SOCIAL SERVICES, for the State of Louisiana

                                        Defendants-Appellants.

_____

Appeals from the United States District Court
For the Eastern District of Louisiana
_____

ON PETITION FOR REHEARING EN BANC

Before KING, Chief Judge and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT, and PRADO, Circuit Judges.[*]

DAVIS AND WIENER, Circuit Judges:

This consolidated appeal presents the same issue we recently resolved en banc in Pace v. Bogalusa City School Board[1]:  Does a state waive its Eleventh Amendment immunity from suit in federal court under § 504 of the Rehabilitation Act of 1973[2] when it

---

[*]Judge Owen was not a member of the court when this case was submitted to the court en banc and did not participate in this decision.

[1] 403 F.3d 272 (5th Cir. 2005) (en banc).

[2] 29 U.S.C. § 794.

accepts federal funds that are granted by Congress under authority of the Constitution's Spending Clause and expressly conditioned on waiver of immunity from § 504?  For reasons that follow, we find no merit in appellants' arguments and reaffirm our conclusions in <u>Pace</u> that acceptance of such federal funds operates to waive a State's Eleventh Amendment immunity under the express conditions of 42 U.S.C. § 2000d-7.[3]

---

[3] The factual and legal background of this consolidated appeal is accurately and succinctly presented in the panel opinions:

A.   <u>Johnson/August v. Louisiana Dep't of Education</u>, 330 F.3d 362, 363–364 (5th Cir. 2003).

Appellee Johnson was a full time student at the University of New Orleans ("UNO") on financial aid.  He is disabled by a partial paralysis of his left foot.  In February 2000, a medical emergency caused Johnson to withdraw from UNO.  Four months later, UNO revoked Johnson's eligibility for financial aid.  Johnson successfully appealed the decision.  The appeals committee, however, did not inform Johnson of its decision until after the fall 2000 semester had begun; the committee also imposed academic requirements to maintain his eligibility for financial aid.  Johnson asserts that because of his late start in fall semester classes, he was unable to comply with the academic requirements.  In January 2001, UNO denied Johnson financial aid for the spring semester. Johnson filed suit against the Louisiana Department of Education, the State of Louisiana, the President of the Louisiana State University System, the Louisiana Board of Regents, and UNO under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and § 504 of the Rehabilitation Act, alleging discrimination against disabled students and failure to provide reasonable accommodations.

[Lynn] August, a blind man, worked as a computer instructor for the Louisiana Department of Social Services ("DSS").  In June 2000, DSS eliminated August's teaching duties, averring that August failed to submit "manual materials" required for use in the computer course.  August contended...that he submitted the necessary material at the same time as a sighted instructor whose materials were approved.  August brought various claims for damages against the DSS and the three state employees in their official capacities, including claims under the ADA and the Rehabilitation Act ( § 504).

## I. BACKGROUND

Louisiana's Department of Education ("LADOE")and Department of Social Services ("DSS")[4] and Texas Tech University Health Sciences Center ("TTUHSC") (collectively "defendants") appeal rulings by district courts which held that, by accepting federal funds offered on explicit conditions of waiver, defendants in fact waived their right to Eleventh Amendment[5] immunity pursuant to 42 U.S.C. §

Separate district courts in the Eastern District of Louisiana dismissed all claims against the defendants based on state sovereign immunity except for those under § 504 of the Rehabilitation Act. The defendants appeal, arguing that state sovereign immunity bars the appellees' § 504 claims.

B.      <u>Miller v. Texas Tech University Health Sciences Center</u>, 330 F.3d 691, 691 (5th Cir. 2003).

King Miller began working as an administrator and professor at [Texas] Tech in 1997. She notified Tech that she suffered from a degenerative eye condition in August 1998; she was diagnosed as legally blind in 1999. In 2000, she sued Tech for allegedly failing to accommodate her disability in violation of § 504, which prohibits discrimination against the disabled by programs receiving federal funds.

...Tech moved to dismiss on the basis of state sovereign immunity. The district court denied the motion, and Tech took this interlocutory appeal.

[4] The case before the panel in <u>Johnson</u> was a consolidated appeal by LADOE and the Department of Social Services for the State of Louisiana ("DSS"). LADOE and DSS consolidated their arguments into one brief for this rehearing en banc, and therefore all arguments accredited to LADOE are also made on behalf of DSS.

[5] The Eleventh Amendment to the United States Constitution states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

2000d-7,[6] and were therefore amenable to suit in federal court for § 504 violations. Later, a panel of this court in <u>Pace v. Bogalusa City School Board</u>[7] ("<u>Pace I</u>") held that, despite the express provision in the grant that entitlement of the grantee to accept the funds was conditioned on such a waiver, a State did not waive Eleventh Amendment immunity from suit under § 504 by accepting federal funds at a time when, based on the then-current state of the pertinent case law, the State had reason to believe that it had no such immunity to waive. Two panels of this court, relying on <u>Pace I,</u> reversed the district courts' denials of Eleventh Amendment Immunity and dismissed the plaintiffs' claims under § 504.[8]

We later reheard <u>Pace</u> en banc and held that, then as now, a State did waive Eleventh Amendment immunity from suit under § 504 by accepting federal funds under such circumstances ("<u>Pace II</u>").[9] Prior to rehearing <u>Pace</u> en banc, we had agreed to rehear the instant cases en banc, but postponed rehearing them pending our

---

[6] Section 2000d-7 (a)(1) provides in pertinent part:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973...or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

[7] 325 F.3d 609 (5th Cir. 2003).

[8] <u>See</u> <u>Miller v. Tex. Tech Univ. Health Sciences Ctr.</u>, 330 F.3d 691 (5th Cir. 2003) and <u>Johnson v. La. Dept. of Educ.</u>, 330 F.3d 362 (5th Cir. 2003).

[9] <u>Pace v. Bogalusa City Sch. Bd.</u>, 403 F.3d 272 (5th Cir. 2005) (en banc) .

decision in Pace II.

After Pace II was announced, we asked the parties in these cases to submit supplemental briefs explaining which of their arguments regarding Eleventh Amendment immunity from suits under § 504 remained viable and which had been foreclosed. In response, the defendants conceded that Pace II forecloses all their arguments except three.

First, both LADOE and TTUHSC contend that no valid waiver of Eleventh Amendment immunity occurred because, even though they received federal funds, none of the state agencies was expressly authorized by state law to waive its respective state's immunity from suit under § 504. Second, TTUHSC contends that Pace II did not address the issue whether § 504 and § 2000d-7 place conditions on federal funds that are not reasonably related to the purpose of the expenditure, which is part of the test for valid Spending Clause legislation set forth by the Supreme Court in South Dakota v. Dole.[10] Third, LADOE asserts that it did not "knowingly waive" Eleventh Amendment immunity under § 2000d-7 by accepting federal funds, contending that this argument, although rejected in Pace II, should be reexamined in light of the Supreme Court's subsequent decision in Jackson v. Birmingham Board of Education.[11]

## II. STATE IMMUNITY UNDER THE ELEVENTH AMENDMENT

---

[10] 483 U.S. 203, 207 (1987).

[11] ___ U.S. ___, 125 S. Ct. 1497 (2005).

6

A.    Express Authority to Waive Immunity

We consider first defendants' argument that they did not waive their states' Eleventh Amendment immunity from suit under § 504 because they lacked express authorization to do so under state law. Defendants do not challenge that they were authorized under state law to <u>accept</u> federal funds or that each received federal funds.[12] Defendants insist, however, that as state agencies, their authority to <u>accept</u> federal funds is insufficient to waive Eleventh Amendment immunity, which, they argue, cannot be validly waived without <u>express</u> statutory authority.

Defendants' argument fails to recognize that grant programs based on the Spending Clause are to be interpreted under ordinary

_____

[12] LADOE is authorized to accept federal funds pursuant to LA. REV. STAT. ANN. § 17:24 (C), which provides in pertinent part:

> The board [LADOE] is hereby <u>designated</u> as the <u>State Agency</u> with respect to federal funds for those programs under the jurisdiction of the board. The State Department of Education shall administer and distribute all federal funds received for the benefit of those phases of education under the jurisdiction of the board. (Emphasis added).

Similarly, LA. REV. STAT. ANN. § 46:51(6) provides that the Department of Social Services of Louisiana [DSS] may "<u>[a]ct as the agent</u> of the state to cooperate with the federal government...and in the administration of federal funds granted in the state to aid in the furtherance of any functions of the department, <u>and be empowered to meet such federal standards</u> as may be established for the administration of such federal funds." (Emphasis added).

Likewise, TEX. EDUC. CODE. ANN. § 110.08, which governs the funding of TTUHSC, provides in pertinent part, "The board [of TTUHSC], in its discretion, may accept and administer grants and gifts from the federal government...for the use and benefit of the Health Sciences Center."

7

contractual principles.[13]   In these cases, the defendants were authorized by the State to accept the benefits of substantial sums of federal Spending Clause money burdened with the clearly stated condition under § 2000d-7 that acceptance waives immunity from suit in federal court. The statutory powers of attorney provided to defendants by their respective state legislatures to accept, administer, and expend such federal funds necessarily includes the authorization to accept the conditions that come along with those funds.  Clothed with this authority, the defendants held themselves out to have authority from their states to comply with the conditions imposed by Congress in the statute.   These conditions are inseparable from the offer of the funds:  The States (or their authorized agencies) may reject the condition of waiver of Eleventh Amendment immunity by rejecting the funds, or they may accept the funds and the conditions; they cannot, however, accept the benefits of the funds and reject the inextricably intertwined condition of waiver by claiming post hoc that the delegation of authority to accept the funds did not carry with it the authority to waive immunity.  This is hornbook contract and agency law.

Therefore, we reject defendants' argument that they retain Eleventh Amendment immunity because they lacked express statutory

---

[13]Barnes v. Gorman, 536 U.S. 181, 186 (2002).

authority to waive their states' Eleventh Amendment immunity.[14]

B. <u>Relatedness</u>

We next address TTUHSC's argument that § 504 and § 2000d-7 are unconstitutional Spending Clause legislation because they place conditions on federal grants that are not <u>reasonably related</u> to the purpose of the expenditure. This is often referred to as the "relatedness" prong of the <u>Dole</u> test for valid Spending Clause legislation.[15] According to TTUHSC, they are not governed by § 504 because none of the federal funds they received were earmarked for § 504 goals of preventing disability discrimination or accommodating disability. TTUHSC urges that, if we determine that the immunity waiver condition imposed by § 504 is not limited to Rehabilitation Act funding but that they accompany all federal funding, we should hold that § 504 fails the "relatedness" prong of the <u>Dole</u> test.

TTUHSC failed to raise this argument in its briefs before either the district court or the original panel of this court. Neither did it argue the point in its original en banc brief. In

---

[14]This disposition makes it unnecessary for us to consider what effect the Supreme Court's decision in <u>Lapides v. Board of Regents of the University System of Georgia</u>, 535 U.S. 613 (2002) has on this issue.

[15] Under <u>Dole</u>, conditions attached to Spending Clause legislation are only valid if they are (a) attached to expenditures that benefit the general welfare; (b) unambiguous; (c) reasonably related to the purpose of the expenditure to which they are attached; and (d) not in violation of an independent constitutional provision. 483 U.S. at 207-208.

<u>Pace II</u>, we concluded that the state defendant had waived this "relatedness" argument because it failed to argue the point before the original panel and did not argue it in its en banc brief beyond a bare assertion.[16]  The maxim is well established in this circuit that a party who fails to make an argument before either the district court or the original panel waives it for purposes of en banc consideration.[17]

If we are required to address this argument because it relates to Eleventh Amendment immunity, and as such may be a "jurisdictional" defense that cannot be waived,[18] we reject it.  We agree with the four circuit courts that have addressed this issue and concluded that, if the involved state agency or department accepts federal financial assistance, it waives its Eleventh Amendment immunity even though the federal funds are not earmarked for programs that further the anti-discrimination and

---

[16] 403 F.3d at 281 n.32.

[17] <u>See Communication Workers of America v. Ector County</u>, 392 F.3d 733, 748 (5th Cir. 2004) (failure to brief an issue constitutes waiver on appeal); <u>Proctor & Gamble Co. v. Amway Corp.</u>, 376 F.3d 496, 499 (5th Cir. 2004)(party waived argument not included in original brief to panel); <u>Cooper Ind. v. Tarmac Roofing, Inc.</u>, 276 F.3d 704, 711 (argument not raised before original panel waived); <u>and Lowry v. Bankers Life and Cas. Retirement Plan</u>, 871 F.2d 522, 525 (5th Cir. 1989) (refusing to consider an argument raised for the first time in a petition for rehearing).  <u>See also</u> FED. R. APP. P. 28 (a)(9)(A) which states that an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

[18] <u>See Edelman v. Jordan,</u> 415 U.S. 651, 677-678 (1974) (because defense of Eleventh Amendment immunity is a jurisdictional bar to the plaintiff's suit, court of appeal did not err in considering defense when it was not argued before the district court).

rehabilitation goals of   § 504.[19]  Chief Judge Scirica's persuasive opinion for the Third Circuit in Koslow is particularly helpful in explaining this point.

In that case, the State of Pennsylvania received federal financial assistance for the State Criminal Alien Assistance Program, established to alleviate costs states incur in imprisoning illegal aliens who commit state offenses.[20]  The state furnished these funds to the Pennsylvania Department of Corrections.[21]  The plaintiff, Mr. Koslow, was employed by the Department of Corrections as a supervisor at the prison's water treatment plant and brought a § 504 suit against his employer for failing to accommodate his disability following a work related injury.[22]

The state defendants argued that the federal government's interest in the federally funded program was too attenuated from the general waiver of immunity set forth in § 2000d-7 respecting claims under § 504.  The Koslow court disagreed and concluded that receipt of federal funding by an agency operated as a waiver of that agency's Eleventh Amendment immunity even though the funds are not earmarked for § 504 purposes.  The court gave three reasons for

---

[19]See Barbour v. Washington Metropolitan Area Transit Authority, 374 F.3d 1161 (D.C. Cir. 2004); Lovell v. Chandler, 303 F.3d 1039 (9th Cir. 2002); Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002); Jim C. V. United States, Atkins School District, 235 F.3d 1079 (8th Cir. 2000) (en banc).

[20]Koslow, id. at 166-167.

[21]Id. at 167.

[22]Id. at 165.

its conclusion. First, the panel found that:

> [t]hrough the Rehabilitation Act [§ 504], Congress has expressed a clear interest in eliminating disability-based discrimination in state departments or agencies. That interest, which is undeniably significant and clearly reflected in the legislative history, flows with every dollar spent by a department or agency receiving federal funds. The waiver of the Commonwealth's immunity from Rehabilitation Act claims by Department of Corrections employees furthers that interest directly.[23]

Second, § 2000d-7 limits the waiver to the agency or department that receives federal funds and does not require waiver by other agencies or the state as a whole.[24] The court concluded that "[t]his limitation helps ensure the waiver accords with the 'relatedness' requirement articulated in Dole."[25]

Finally, the court observed that, as a practical matter, § 504 funds received by specific state departments or agencies are frequently not tracked, making it virtually impossible to determine how the agency spent the federal dollars and whether the federal funds paid for the affected employee's salary or benefits.[26]

For the same reasons articulated in Koslow, we reject the TTUHSC's argument that the substantial federal financial assistance for education it received is unrelated to the goals of § 504 and therefore fails Dole's "relatedness" requirement.

---

[23]Id. at 175-176. (internal citation omitted).

[24]Id. at 176.

[25]Id.

[26]Id.

12

C.    <u>Jackson v. Birmingham Board of Education</u>

Finally, LADOE argues that it did not "knowingly" waive Eleventh Amendment immunity from suit in federal court under § 504 in accordance with § 2000d-7 by accepting federal funds.  As LADOE acknowledges, this argument was considered and rejected by our en banc majority in <u>Pace II</u>.[27]  LADOE nevertheless argues that the Supreme Court's decision in <u>Jackson v. Birmingham Board of Education</u>,[28] requires us to re-examine the issue, repudiate the reasoning of <u>Pace II</u>, and adopt the analysis of <u>Pace I</u>.  In <u>Pace I</u>, the panel held that the state defendant did not "knowingly" waive its Eleventh Amendment immunity by accepting federal funds because, at the time it received those funds, the prevailing legal authorities suggested that it had no Eleventh Amendment immunity from suits under § 504.[29]

In rejecting the <u>Pace I</u> panel's syllogism, the en banc court in <u>Pace II</u> held that, in accordance with <u>Pennhurst State School & Hospital v. Halderman</u>,[30] "the only 'knowledge' that the Court is concerned about is a state's knowledge that a Spending Clause condition requires waiver of immunity, <u>not</u> a state's knowledge that it has immunity that it could assert."[31]  We also stated in <u>Pace II</u>

---

[27] 403 F.3d at 282–285.

[28] ___ U.S. ___, 125 S. Ct. 1497 (2005).

[29] 325 F.3d at 617.

[30] 451 U.S. 1 (1981).

[31] <u>Pace II</u>, 403 F.3d at 279 (emphasis in original); <u>see also</u> <u>Dole</u>, 483 U.S. at 207 (quoting <u>Pennhurst</u>).

that, "[a]t bottom...if Congress satisfies the clear statement rule, the knowledge prong of the Spending Clause waiver analysis is fulfilled."[32]   Finding that § 504 and § 2000d-7 clearly and unambiguously conditioned the receipt of § 504 funds on waiver of a State's Eleventh Amendment immunity from suits grounded in § 504, we held that the State had "knowingly waived" immunity from suits under § 504.[33]

LADOE does not argue that § 504 and § 2000d-7 fail the "clear statement rule" of Pace II; rather LADOE contends that in Jackson (decided after Pace II) the Supreme Court repudiated this "clear statement rule" and replaced it with a "notice" rule.  In Jackson, the male coach of a high school's girls basketball team asserted a retaliation claim against the local school board, grounding his claim in Title IX.  The school board argued that, because retaliation claims are not expressly authorized by the language of Title IX, it was not put on notice of the potential for retaliation claims under the statute.[34]

The Supreme Court agreed that, because Title IX was passed pursuant to the Spending Clause, "private damage actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue."[35]

---

[32] Pace II, id.

[33] Id. at 282-285.

[34] Jackson, 125 S. Ct. at 1508-09.

[35] Id. (internal citation omitted).

14

Consonant with its holding in Pennhurst, the Court reiterated its position that a State must be aware of the conditions imposed on receipt of federal funds for there to be "knowing acceptance" of those conditions.[36]  Acknowledging that Title IX is silent on the question of the fund recipient's amenability to retaliation suits, the Court looked to its prior decisions dealing with the scope of remedies available under Title IX and concluded (in the absence of a "clear statement") that the school board nevertheless had sufficient "notice" because:

> [T]he Board should have been put on notice by the fact that our cases since Cannon [v. University of Chicago, 441 U.S. 677 (1979)], such as Gebser [v. Lago Vista Independent School Dist., 524 U.S. 274 (1998)] and Davis [v. Monroe County Bd. of Ed., 526 U.S. 629 (1999)], have consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination.[37]

LADOE would have us read Jackson as the Court's abandoning of College Savings Bank's "clear statement rule" that we applied in Pace II and replacing it with a "notice" test of what the recipients of the funds should have known at the time the funds were accepted.  We cannot read such a sweeping change into the court's opinion in Jackson.  Title IX, the statute at issue in Jackson, is silent (or at least ambiguous) regarding retaliation; in contrast, the Spending Clause statutes we addressed in Pace II were clear and unambiguous regarding waiver:  Section 2000d-7

---

[36] Id. at 1509 (quoting Pennhurst, 451 U.S. at 17).

[37] Id.

15

expressly and unambiguously states that parties waive their Eleventh Amendment immunity to actions under § 504 by accepting federal funds. Moreover, there is no language in Jackson that can be pointed to in support of a conclusion that the Court desired to modify, much less repudiate, the well-established rule with such a long and distinguished history laid out in Pennhurst, Dole, and College Savings Bank that "if Congress intends to impose a condition on the grant of federal moneys," "it must do so unambiguously" and "speak with a clear voice."[38] Stated differently, nothing in Jackson undermines Pace II's holding that a clear statement like the one found in § 2000d-7 is sufficient to satisfy the "knowing" requirement for a waiver to be valid." Even if Jackson can be interpreted as standing for the proposition that a clear and unambiguous statement from Congress is not the exclusive road to a "knowing waiver," it cannot be read to call into question the holding in Pace II that the presence of a clear statement is sufficient to satisfy the need for a waiver to be "knowing." Accordingly, LADOE's Jackson argument in this regard fails.

### III. CONCLUSION

We hold that LADOE, DSS, and TTUHSC are not entitled to Eleventh Amendment immunity in these consolidated cases. We therefore affirm the district courts' denials of defendants' motions to dismiss plaintiffs' claims under § 504 on the basis of

---

[38] Pennhurst, 451 U.S. at 17; see also Dole, 483 U.S. at 207.

such immunity, and we remand the cases to the district courts from whence they came for further proceedings.

AFFIRMED AND REMANDED.

EDITH H. JONES, Circuit Judge, joined by JOLLY, SMITH, GARZA, DEMOSS and CLEMENT, Circuit Judges, concurring in part and dissenting in part:

The en banc decision in <u>Pace v. Bogalusa City School Board</u>, 403 F.3d 272 (5th Cir. 2005), held that a state voluntarily and knowingly waived its Eleventh Amendment immunity, as a matter of federal law, from suits for damages in federal court by accepting federal Rehabilitation Act funds made subject to 42 U.S.C. § 2000d-7. We adhere to the arguments in the dissent from that decision. We concur, however, in the court's disposition of the states' fallback arguments in these cases.[39]

---

[39]Of course, the court's conclusion here that <u>state law</u> properly authorized the state officials to execute contracts in no way undercuts the arguments in dissent from <u>Pace</u> that the <u>federal law</u> during the relevant time period (1996 through 1998) did not communicate to the states that they possessed Eleventh Amendment sovereign immunity to waive. <u>See</u> <u>Pace</u>, 403 F.3d at 301 (Jones, J., dissenting).