# United States Court of Appeals for the Fifth Circuit

_____

No. 23-30504
Summary Calendar
_____

United States Court of Appeals
Fifth Circuit

**FILED**
February 5, 2024

Lyle W. Cayce
Clerk

Ruizhu Dai, *also known as* Rachel,

*Plaintiff—Appellant*,

*versus*

Son Le, *individually and in his official capacity*; Kirk Ring, *individually and in his official capacity*; William McCumber, *individually and in his official capacity*; Christopher Martin, *individually and in his official capacity*; Terry McConathy, *individually and in his official capacity*; Les Guice, *individually and in his official capacity*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:22-CV-1551

_____

Before Higginbotham, Stewart, and Southwick, *Circuit Judges*.
Per Curiam:[*]

Ruizhu Dai was enrolled in a doctoral program at Louisiana Tech University. Members of the faculty assessed her research paper as poor, setting

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

No. 23-30504

off a chain of events that led to her resignation from the doctoral program. Dai sued employees of the university for discrimination, retaliation, violation of due process, violation of equal protection, and breach of contract. The district court granted summary judgment to the defendants. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Dai enrolled as a candidate in the Doctor of Business Administration ("DBA") program at Louisiana Tech University in 2019. She received a graduate assistantship ("GA") position in the Department of Management, which came with a $15,000 yearly stipend. In the summer of 2021, Dai enrolled in the class "Management 604: Preparing Publishable Research." On October 1, 2021, she presented her paper for this class to faculty and students. Dai alleges that her work was "criticized vehemently" by defendant Dr. Son Le during her presentation. The criticisms appear to have centered on her chosen research methodology. She further asserts that toward the end of her presentation, defendant Dr. Kirk Ring "effectively" called her an idiot in front of those present. Dr. Ring's notes on the presentation described Dai as combative and unprepared in answering questions. Dai received a "D" grade on her presentation, lowering her course grade to a "C." Although the timing is disputed, at some point after the presentation the Department of Management professors terminated Dai's teaching responsibilities under her GA position, too.

On October 4, 2021, Dai sent an email captioned "A respectful clarification" to Dr. Ring. Dai copied on the email Dr. Le and defendant Dr. William McCumber, the Chair of the Management Department, as well as faculty and students who attended her presentation. The email criticized the professors' response to her presentation, and defended Dai's preferred research methodology while questioning theirs. It began, and then ended, as follows:

No. 23-30504

> Thank you for your comments and suggestions about my term paper presented last Friday. With all due respect and running the risk of being unprofessionally called an "idiot" in public for defending my position. I'd like to respectfully make some clarifications about your critique on my methodology.
>
> . . . .
>
> Maybe, I'm barking up the wrong tree because the point of my term paper is NOT about methodology, while I fully understand that using the right method or using the method the right way is fundamental, as made clear by McWilliams & Siegel (AMJ, 1997, attached). Of course, I stand to be corrected, especially by Dr. McCumber, who is in Finance and was not there during my presentation.

On October 13, Dr. Bruce Walters sent an email to Dai informing her that he was not interested in serving as the chair of her dissertation committee. A dissertation is required to complete the DBA program. Dai claims that Dr. Walters had previously agreed to serve as chair, but backed out under pressure from defendants Dr. Le, Dr. Ring, and Dr. McCumber. Also on October 13, Dr. McCumber sent Dai an email informing her that she must attend a meeting on October 18 to "chart[] a path forward for [her] to successfully complete the doctoral program." Failure to attend would result in dismissal from the program. Dr. Le, Dr. Ring, Dr. McCumber, and Dr. Stacey Gilbert, a student affairs representative, attended the October 18 meeting with Dai. Dai asserts that at the meeting, defendants Dr. Le, Dr. Ring, and Dr. McCumber (1) unfairly criticized her for her prior GA work and removed her from the position; (2) cut the amount of time she had to form her dissertation committee from six months to two months; and (3) asked her to leave the DBA program.

Dai then appealed both the termination of her GA position and her course grade. Defendants Dr. Christopher Martin, the Dean of the College of Business, and Dr. Terry McConathy, the university Provost, upheld both

3

decisions. Dai also appealed to defendant Dr. Les Guice, the President of Louisiana Tech University. Dr. Guice informed her that he found "no evidence of systematic retaliations," and likewise upheld the decisions. Dai was eventually given the full six months to form a dissertation committee, but was unable to do so. She dropped out of the DBA program in the spring of 2022.

In June 2022, Dai filed suit in the United States District Court for the Western District of Louisiana. In July 2023, the district court granted the defendants' motion for summary judgment. Dai, proceeding *pro se*, timely appealed.

## DISCUSSION

We review a summary judgment *de novo*. *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material only if "under the applicable law, its resolution could affect the outcome of the action." *Patel*, 941 F.3d at 747 (quotation marks and citation omitted). Although we review all evidence in the light most favorable to the nonmoving party, conclusory allegations and unsubstantiated assertions are not enough to defeat summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The district court concluded the defendants were entitled to sovereign immunity on all claims asserted against them in their official capacity. It further determined Dai's other claims were either barred by qualified immunity or failed as a matter of law. We address Dai's claims separately.

### I.    *Sovereign Immunity*

Dai sued the defendants in both their official and individual capacities. Sovereign immunity bars lawsuits against states and their officers acting in an

official capacity. *United States v. Abbott*, 85 F.4th 328, 333 (5th Cir. 2023). "An official-capacity suit is, in all respects other than name, to be treated as a suit against the state governmental entity." *Id.* at 334 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Dai does not contest the district court's conclusion that Louisiana Tech University is eligible for sovereign immunity as an arm of the state but argues (1) the university has waived sovereign immunity through the receipt of federal funds and (2) her lawsuit may proceed under the exception created by *Ex parte Young*, 209 U.S. 123 (1908).

First, Louisiana has not consented to suit in federal court: "No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." La. R.S. § 13:5106(A). Dai, citing one of our precedents, argues that Louisiana Tech waived its sovereign immunity by accepting federal funding. *See Miller v. Texas Tech University Health Sciences Center*, 421 F.3d 342 (5th Cir. 2005). That case, though, dealt only with a state's waiver of immunity from suit in federal court under Section 504 of the Rehabilitation Act of 1973. *Id.* at 347–48. Dai does not argue that Section 504 is relevant here, and *Miller* does not hold that a university's acceptance of any federal funding waives immunity to all lawsuits under any federal statute. There is no waiver here.

Second, the district court was correct that *Ex parte Young* does not apply. To overcome sovereign immunity under that doctrine, the lawsuit must: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). Further, the suit must seek equitable relief. *Id.* As the district court held, Dai's claims fail at the second element: she alleges past wrongdoing by the defendants, not ongoing conduct. The claims here

center around the defendants' actions in response to Dai's presentation on October 1, 2021, and email on October 4. The alleged retaliation by the defendants of lowering her course grade and dismissing her from her GA position began and ended in the past. Because Dai alleges only past wrongdoing rather than ongoing conduct, *Ex parte Young* does not allow this suit against the defendants in their official capacities.

The district court did not err in concluding that the defendants were entitled to sovereign immunity.

## II.    *Qualified Immunity*

The defendants assert they are entitled to qualified immunity for all claims brought against them in their individual capacities. Government officials are generally entitled to a qualified immunity which shields them from civil damages liability for the performance of discretionary functions if their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). A plaintiff may overcome the assertion of qualified immunity by showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wilkerson v. Univ. of N. Tex. ex rel. Bd. of Regents*, 878 F.3d 147, 155 (5th Cir. 2017) (quotation marks and citations omitted). This court may uphold a grant of qualified immunity under either factor. *Id.* We need to consider only whether any federal rights were violated.

### a.    *Violation of the Freedom of Speech*

Dai contends that the defendants' actions in response to her email amount to discrimination, retaliation, and conspiracy, violating her constitutional right to the freedom of speech. We analyze this issue as it relates to the termination of Dai's GA position under the framework for First

6

Amendment retaliation in employment. To establish that claim, a plaintiff must show: "(1) [she] suffered an adverse employment action; (2) [she] spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quotation marks and citation omitted).

We resolve this issue under the second requirement. "Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quotation marks and citation omitted). To determine whether speech related to a matter of public concern, what controls is "the content, form, and context of the speech, as revealed by the whole record." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999).

Dai argues that her email, which is the speech at issue, touched on a matter of public concern because of its discussion of research methodology best practices. Dai relies on the email being sent to those who attended her presentation as proof that the speech's form and context was public. A particularly illuminating factor here is "whether the comments were made against a backdrop of widespread debate in the community." *Id.* at 222. Dai has offered no evidence that the email satisfies this factor. The email is actually labeled a "clarification" relating to Dai's presentation three days earlier, and is structured as a rebuttal of the criticisms made against her paper. That Dai emailed only those who were at the presentation, rather than the business or graduate communities at Louisiana Tech more broadly, indicates that she spoke regarding the private matter of her own academic capabilities.

Because Dai has not shown her speech was on a matter of public concern, the defendants are entitled to qualified immunity on these claims.

### b.    *Violation of Due Process*

Dai argues that the defendants violated her procedural due process rights in handling her complaints regarding her course grade and the termination of her GA position. She claims the defendants failed to follow La Tech Policy 2310 and La Tech Policy 1441.

"The touchstone of due process is protection of the individual against arbitrary action of government." *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 430 (5th Cir. 2017) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "When the fault lies in a denial of fundamental procedural fairness, the question is one of procedural due process." *Id.* (quotation marks and citations omitted). The first question for the analysis is whether the state has deprived a person of life, liberty, or property. *Id.* After identifying a protected interest, this court must determine the amount of process due. *Id.* at 431.

First, we agree with the defendants that La Tech Policy 1441 is inapplicable here. La Tech Policy 1441 protects from retaliation "persons who, in good faith, complain of discrimination and or harassment, or who assist or participate in the complaint process." Dai is correct that the person alleging retaliation need not be a member of a protected class. Even so, the underlying discrimination must be "[i]nequitable treatment of an individual based on protected characteristics or status rather than individual merit." Dai disclaimed that she had been treated unfairly or differently on the basis of being an international student from China or being a woman. Instead, she argues she was discriminated against for the views expressed in the October 4, 2021, email. Even assuming the defendants lowered her course grade and removed her from the GA position because of the email, this would not amount to

discrimination on the basis of a protected characteristic as contemplated by La Tech Policy 1441.

Second, while La Tech Policy 2310 did govern Dai's GA position, it does not support a due process violation here. Dai asserts the defendants failed to meet with her, as La Tech Policy 2310 provides. That policy has no relevance because Dai's own communications through the grievance process revealed her preference for email over in-person meetings. In her October 28 complaint addressed to the Dean of the College of Business, she stated "on Mon, Oct 4, 2021, I received an email from Dr. Ring, asking me to meet in person about my 'hot' email above, and I declined . . . . During this still raging pandemic . . . it is a lot safer and more rational to discuss things, esp. academic points, by email." Dai has not identified any instance in the record where she requested a meeting in the dispute resolution process, much less any instance where university officials refused to meet with her.

The defendants provided Dai with the requisite process. To the extent that Dai had a protected interest in her GA position and stipend, it was minimal because of the terms of employment and the academic setting. Dai's interest in her GA position was not unqualified; her offer letter provided that unsatisfactory performance could lead to early termination. Further, "[c]ourts overwhelmingly agree that students . . . are not entitled to as much procedural protection under the Fourteenth Amendment as employees who are terminated from their jobs." *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989). We need not determine exactly Dai's interest in the GA position to find due process satisfied here. *See id.*

When Dai first raised her complaint with defendant Dr. McConathy, she informed Dai that proper procedure was to file her complaint with the business school. Dai then filed a complaint with defendant Dr. Martin, the Dean of the College of Business. Dr. Martin reviewed the materials

submitted by Dai as well as her paper and presentation materials, spoke with her professors, and only then upheld her course grade and the termination of her GA position. Dai appealed to defendant Dr. Guice, who informed her that he had conducted a "thorough review" of her formal complaint and would uphold the prior decisions. Dai claims that the defendants' review was deficient. Dai, however, admitted in her deposition testimony that she had no knowledge of the efforts undertaken by the defendants in their review of her complaint. Regardless of Dai's argument, there is no evidence the defendants failed to investigate her complaint, or that they acted in bad faith in conducting their review. Summary judgment was proper on this claim.

### c.    *Violation of Various Federal Statutes*

Dai cites several federal statutes as grounds for relief. We discuss each.

*42 U.S.C. § 1985(3)*: Section 1985 is entitled "Conspiracy to interfere with civil rights," and subsection (3) addresses "depriving persons of rights or privileges." Dai argues that "discrimination based on free speech" is an avenue to relief under this statute. The Supreme Court has provided guidance on this statute. *See Griffin v. Breckenridge*, 403 U.S. 88 (1971). The fact Section 1985(3) "was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101. "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102 (emphases in original). As noted, Dai disclaimed discrimination based on a class characteristic, and instead predicates this claim on her free speech right. The free speech claim does not fit within Section 1985(3).

*Title VII*:  Dai's complaint, without explicitly referencing Title VII, generally raised the issue of discrimination and retaliation.  We construe her *pro se* complaint liberally, *see Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 601 (5th Cir. 2017), and consider it to have made a challenge under Title VII.  A claim under Title VII fails for two independent reasons.  First, as Dai concedes, she failed to exhaust her administrative remedies by filing a complaint with the EEOC.  *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).  Second, Title VII prohibits discrimination based on "[an] individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Dai has disclaimed class-based discrimination, so Title VII would not be an appropriate ground for relief even if she had exhausted her administrative remedies.

*42 U.S.C. § 1981*:  Dai's complaint asserted discrimination in violation of Section 1981.  The statute provides in part that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  The analysis under a Section 1981 claim is identical to that under a Title VII discrimination claim.  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).  Dai's claim under this provision likewise fails because she does not allege discrimination on the basis of a protected class characteristic.

*42 U.S.C. § 2000c-8*:  Section 2000c-8 provides: "Nothing in this subchapter shall affect adversely the right of any person to sue for or obtain relief in any court against discrimination in public education."  It is part of a statutory scheme concerning the desegregation of public schools.  *See* 42 U.S.C. §§ 2000c-2 to 2000c-9.  Section 2000c-8 does not on its own provide a

private cause of action, *see Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001), and can provide no relief for Dai.

*42 U.S.C. § 2000c-9*: Section 2000c-9 states only that "[n]othing in this subchapter shall prohibit classification and assignment for reasons other than race, color, religion, sex or national origin." Like Section 2000c-8, it provides no basis for relief here.

*42 U.S.C. § 2000h-1*: Section 2000h-1 deals with double jeopardy protections in the context of acquittals or convictions of criminal contempt under the Civil Rights Act of 1964; the provision is inapposite here and provides no basis for relief.

The district court accordingly did not err in concluding that claims under these federal statutes failed as a matter of law.

## III.    *Breach of Contract*

Finally, Dai asserted a state-law breach of contract claim relating to the termination of her GA position, a claim that would be available under the district court's supplemental jurisdiction. To prevail on a breach of contract claim under Louisiana law, plaintiffs must show "(1) defendants owed them an obligation; (2) defendants failed to perform that obligation; and (3) defendants' failure resulted in damages to the plaintiffs." *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 193 So.3d 1110, 1115 (La. 2015). The district court held that this claim failed as a matter of law.

Dai's GA offer letter is at issue here. Even if the defendants owed Dai an obligation under this letter, Dai's breach of contract claim would fail as a matter of law. The GA offer letter specified that "[a]ssistantship renewal is contingent upon satisfactory progress toward completion of your degree program and job performance. Unsatisfactory performance can also result in an

No. 23-30504

earlier termination of the assistantship." The defendants introduced evidence that they terminated Dai's graduate assistantship and then upheld that termination after concluding she was unprepared to teach undergraduate classes.

We consider this an academic decision, which we review deferentially:

> When judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment. Plainly, they may not override an academic decision unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Patel*, 941 F.3d at 747 (citation omitted). The district court did not err in concluding that Dai's breach of contract claim failed as a matter of law.

AFFIRMED.

13